The first case, Seguros v. Truesdale. Good morning, Your Honors. May it please the Court, my name is Alan Pollack, and I represent the Plaintiff Appellant. The linchpin of the District Court's flawed decision that the guarantee was signed by Truesdale, and did not contain any language that imposed personal liability on him, and therefore, the appellant's complaint did not plausibly allege a claim upon which relief can be granted. We submit, Your Honor, that the District Court's decision distorts the clear and explicit language of the guarantee, ignores the underlying intent of the guarantee. Is the language clear? We believe it is, Your Honor, and I will- Does it say that it's a personal guarantee? Yes, it does, Your Honor. Does it use those words? No, it doesn't, Your Honor. The language that it uses is contained in subsection 1, which appears on page 46 of the record. Subsection 1, and I can read it to you, Your Honor. You're welcome to. I have it in front of me, but you're welcome. Okay. The language that is used there, Your Honor, is that Mr. Truesdale agreed to become personally, jointly, and severally liable. It is Hornbook law, Your Honor, that the term joint and several guarantors imposes liability on one or more of the guarantors- You're leaving out a phrase, though, right? I- You're leaving out a phrase. On behalf of, which I will get to in a moment, Your Honor- We're going to get there first, right? That comes before joint and several guarantor. Yes, Your Honor, but joint and several guarantor means what it says it means, which is one or more guarantors are either separately will be held responsible or together. On behalf of, the language that's included, does not negate the intention. The words on behalf of have two definitions. One, as a representative. Two, for the benefit of. If one reads on behalf of- Some ambiguity there, then? Not in the context of joint and several liability. Did Grad execute a separate guarantee? No, Your Honor. Mr. Truesdale, as the president and sole shareholder of the company, executed this agreement. I understand. My question was whether there was a second guarantee signed by Grad. Not that we are aware of, Your Honor. Was Grad liable on the debt as a principal? The term primary payor clearly suggests that he may have been. He may have been? Well, he is- I'm asking about Grad. I mean, was Grad liable on any other document already? Well, they received the bond, Your Honor. This was a joint venture between two companies that were awarded a job- I'm actually trying to help you. I know that. I mean, my question is, was this guarantee redundant? If this were signed by Grad or on behalf of Grad, would it be redundant to other documents in the case? To other obligations in the case? We believe this document imposed liability on Mr. Truesdale. I understand that. Okay. It's a different way. The debtor is consortium, right? The joint venture. No, Your Honor. The consortium is not mentioned in this document. I understand. The consortium was awarded a job- We're talking about- we're trying to find out about the overall structure and how this guarantee fits in to the deal. We're both trying to ask now whether this guarantee supplements some other obligation. I mean, was Grad a partner? Yes, Your Honor. And it would have been liable as a partner on the underlying debt? Exactly. And therefore, there would have been no need for it- it would have been redundant for it to guarantee itself. Absolutely, Your Honor. The joint venture consisted of two- What is the other obligation that Grad was already on the hook for? Grad was the recipient. Grad was required, together with the other joint venture, they were both required to get bonds. The bonds indemnified the government of Venezuela. If the government of Venezuela believed that there was a default, the government of Venezuela could go after both the entity that was awarded the job and the sureties. The sureties, my client, required, as a condition for issuing the bonds to Grad, that Grad would personally guarantee the obligations of its company who received the bond. So, therefore, Grad, separate and apart from this, was obligated as a partner of the joint venture, and Grad, as a result of signing this agreement- You mean Mr. Truesdale? Excuse me, Mr. Truesdale. I'm sorry I misspoke, Your Honor. That Mr. Truesdale, by virtue of signing this agreement and being the president and sole shareholder of Grad, was assuming joint and several liability as a guarantor of the bond that was issued to Grad, which was required as a condition for the joint venture to receive the project from the government of Venezuela. So the liability was joint and several with whom or what? With Grad. And Grad already independently had that obligation to the issuer of the bonds, is that right? Yes, it did, Your Honor. Let me ask about that. There's no choice of law provision in this instrument, but if Venezuelan law had applied, would the surety, Seguros, have had the right to proceed individually against Grad if continuum defaulted? We believe it would have, but we never were afforded the opportunity of getting that far because we were denied the opportunity of taking any discovery. We had requested the opportunity to take- But you're a Venezuelan company, right? Yes. So you would know what Venezuelan law would allow you to do. And I believe we would have, Your Honor, yes.  You've saved some time for about a minute. Yes. Thank you. Good morning to the panel. I'm Peter Pizzi, and I represent Alan Truesdale. I'd like to address the panel's question to my adversary first. Focus on the language of the guarantee. I mean, I think there's some ambiguity here, but there certainly are many phrases that would suggest that this was a personal guarantee. I have to differ with that. First of all, repeatedly, there is the statement, on behalf of, that we know from this court's law, learner and the like, that means as a representative of. Other than that, what else is there to suggest that this was not a personal guarantee? The very first phrase in the instrument, I, Alan Truesdale, goes on to identify himself. That suggests that it's personal, I, Alan Truesdale? Your Honor, I think you have to read the entire sentence. Acting in my capacity of president of, and then goes on to describe GRAD, this partnership professional association in Newark, New Jersey. Signature line? Signature line? There is no signature line. It was sent for signature with no suggestion how it should be signed. It doesn't say GRAD by Alan Truesdale. Oh, no, it doesn't, because it says- It says Alan Truesdale. It says, repeatedly, he's signing on behalf of, and it says- I'm talking about the place where you, where apparently, oh, actually, there was no signature line, but he just wrote Alan Truesdale. Notice it's- I'm looking at A43, the Spanish version. Yes, and it's on GRAD station. If he were signing for GRAD as a guarantor, why wouldn't he have signed GRAD by Alan Truesdale? There was no signature block set up for him that way. This was the way it came, and it was on GRAD- Is that at least create some ambiguity? Your Honor, if there's ambiguity, they're done. The law of New York is that a guarantee is strictly construed according to its terms. Where there is a corporate instrument- We can't figure out what its terms are. Well, no, that's fatal. You don't interpret your way into personal liability on an individual retiree living in Brooklyn some 17 years after this instrument is signed. That's why this case was a dismissal case on a Rule 12 motion. If this were a guarantee by GRAD, wouldn't it be superfluous or duplicative of the underlying obligation? That's an excellent question, and the answer is no. This was a joint venture. The law of joint ventures is the creditor- In this case, the government of Venezuela- has to exhaust the assets of the joint venture before it can go against the members of the joint venture separately. Even so, Seguros was not a party to the joint venture agreement, and Seguros wanted the right to pursue assets from GRAD immediately, which is what this instrument gave Seguros the right to do. So the joint and several liability recited in the instrument is who and who? It is joint and several, GRAD and EIFL, the other joint venture partner. And even though GRAD was already independently liable on the obligation, but not to the issuer of the bond, I guess. That's correct, and also that's basically the point. Seguros is issuing the bonds, and they want recourse immediately to the corporate beneficiaries of the bond, in a sense, EIFL and GRAD. And we know from the allegations in the complaint that there was a parallel instrument in favor of EIFL or in favor of Seguros from EIFL. So I go back to- And that's because the common law rule says you can't go against the partners until you've exhausted your remedies against the joint venture. That is correct, Your Honor, and we did brief that below in our reply brief to Judge Maskoff. So I go back to Judge Chin's point, isn't this ambiguous? Well, if Your Honors find that the case is over, that's why this is a 12B6 motion. The instrument is attached to not the first complaint, to an amended complaint. They knew what our allegations, what the principles of law that we're going to apply were. We told them in the pre-motion letter, and so they have an amended complaint they seek to enforce. And given the law of New York that a guarantee is strictly construed, you test that instrument on the motion. And given that it's a corporate instrument, we know GRAD is bound by various provisions in this agreement, and yet there's only one signature. We have the rule that doubly makes this appropriate for a motion to dismiss, that there's no personal liability on the part of an individual signatory for a disclosed principle unless there is clear and explicit evidence. Still focusing on the language. Yes. It says, I agree and accept to appoint myself. Right. On behalf of GRAD Associates PA. We can't really stop reading. I don't know what that means. I appoint myself. In other words, it could mean that I'm appointing myself for the benefit of GRAD. It could mean I'm accepting an appointment on behalf of GRAD. It could mean either one. Are there any questions raised possibly? That's fatal. I'm sorry.  Why is it fatal? Because that's the law of New York. You don't interpret your way into destroying someone's life on a personal guarantee. You can't back into it. You can't have alternate interpretations. It either is or it is not. And this is not. This is an instrument beyond all else in the Spanish language with no accompanying translation, suggesting that no one was remotely thinking we were going to have to go to Brooklyn or to Newark, New Jersey. We want to look at the evidence of the party's intent in the ordinary contract situation. I appreciate that, Your Honor, but that's not what this instrument is. A guarantee exacts a very high standard on the proponent. You cannot feel your way into discovery about what this thing means. It should have been on the document itself. It should tell exactly what's going on. Just so that there is notice to this individual that he's putting everything he has at risk. So that's why when you look at, say, the other aspects of this, repeatedly we have the language on behalf of and we have, I appoint myself on behalf of grad associates throughout it. Is there any question about the nature of the translation? I mean, I have some familiarity with, you know, romance languages, and sometimes the reflexive is used in a way that may be translated as myself but doesn't really indicate the independent action and personal obligation that this translation might suggest, even though that's countered in any event by it being followed by on behalf of grad associates. So I don't have the facility with language, and I think there was not a thought. Is there any question about the translation? Well, the first translation and the second translation conflict. I suggest if you look at the first translation, it defines grad as the guarantor. Now, in the second translation, they call grad the bonded party. So that's kind of material difference, and yet the plaintiff here wants to, you know, have discovery. That suggests there's a factual question as to the translation, whether the translations are accurate. Your Honor, that can't be imposed on the signatory to an instrument that's suggested to be under New York law a guarantor. Just whether there's an accurate translation? That is not Mr. Truesdale's problem. This instrument was given to him without a translation. No one was thinking we're going to have to enforce against Mr. Truesdale in the courts of the United States. Shouldn't we at least ascertain what the correct translation is of the document that's in Spanish? If there is an ability to translate it in multiple ways, that is fatal as well, just as the words in English are ambiguous. Because under New York law, there has to be overwhelming evidence of the signatory's intention to assume personal liability. It has to be clear and explicit. That's the standard, and this is not the rare case. As Lerner said, there will be a rare case that an individual is liable on an instrument that he signs for a disclosed principle. This instrument imposed numerous obligations on Grad, including coming up with a million dollars and all of that, and yet there's only one signature. This Spanish language instrument with garbled translations and with repeated references to Mr. Truesdale's acting on behalf of a disclosed principle and no reference to him absent the language on behalf of is not the rare case where they can go forward with discovery and try and succeed here. The clear and explicit evidence standard is one that can be tested on the motion to dismiss, which is completely appropriate when the instrument is attached to an amended complaint as this was here. Thank you. Thank you. A few points, Your Honor. My adversary indicated that the—I think in response to your question, Your Honor, that joint several liability is between Grad and IFA. Conspicuously absent in this agreement is any mention of IFA or the joint venture. The only parties that are even mentioned in this agreement are Grad and Truesdale. And in the agreement itself, if you look at the subsections of the agreement, it articulates the different responsibilities that each party has. Do you agree that the standard under New York law is that there must be overwhelming evidence of the signatory's intention to assume personal liability? Yes. The explicit evidence? Well, we don't have to look— Isn't this less than that? No, no. But, Your Honor, this Court in Lolo articulated a five-part test to determine the intention of the parties. Excuse me. Lolo was an ERISA case, which nevertheless consulted with New York law, but it was a New York law case. So if we're applying any standard, it's a New York law standard, right? It's not a federal law standard. Your Honor, I respectfully disagree. That's a distinction without a difference. The Lolo factors have been applied in other cases, several in the Eastern District, which had nothing to do with ERISA, as well as the Southern District. And all of those cases, Your Honor— District courts have done that, but in this Court, applying New York law, are not the New York authorities more controlling the New York Court of Appeals particularly than any New York district courts? And I'm not seeing the New York Court of Appeals applying those Lolo factors. Well, the Second Circuit has directed district courts in this circuit to apply what it believes to be the factors to ascertain what the intention is of the party signing, whether he was signing in his representative capacity or in his personal capacity. It's kind of interesting. If you look at Lolo itself, it cites the New York Court of Appeals decision in Meinhard for those factors. Yes. It then takes what I think was a very clear contractual provision and imposes liability on the principal and applies those Lolo factors in Lolo in three sentences. We've got 80 pages of briefs between the two of you applying those factors. And then if you look at the Meinhard New York Court of Appeals decision, I don't see those factors being applied at all. Your Honor, I believe— I don't see them being applied in the successor to Meinhard. I just see the New York Court of Appeals looking at the language and saying, is there a clearly unambiguous assumption of liability by the principal? Your Honor, this is a 12B6 motion. This is a motion that is addressed to the face of the pleadings. The District Court exceeded its authority by looking—by resolving factual issues. And that was— If we determine that there is some ambiguity in the agreement, do you lose? No, Your Honor. If you decide that there's some ambiguity, you should be ordering the case to go back to the District Court with directions to allow parties to take some discovery to— If there is some ambiguity, then arguably it's not clear that he was assuming personal liability. It's not—I mean, he says it's not clear and explicit. It has to be viewed in a context, Your Honor. Any skillful lawyer can take a phrase and create some ambiguity. That's—Your Honor— You have to insult your adversary, but this one doesn't take that much skill. I mean, this is— Well, Your Honor, we believe this agreement in the context of the bonding industry. And IGBAL does suggest that District Courts, in deciding 12v6 motions, need to apply their judicial experience and common sense. It is well established, Your Honor, that in the construction industry, one doesn't get a $30 million bond without appropriate guarantees. That just doesn't happen, Your Honor. I'm familiar with the New York construction industry. I'm less familiar with the Venezuelan construction industry. Well, Your Honor, I would suggest it is identical, the concepts, the principles, the justifications, the reasons. Surety companies don't want to go too far out on any limb, whether they're here in the United States or in Venezuela or any place. And when IGBAL directs District Courts, in deciding 12v6 motions, to use their common sense and judicial experience, what they're suggesting is what's going on in the real world. That's what the courts should be looking at in deciding these kinds of motions. It is inconceivable, Your Honor, that a bonding company is going to go out on the limb and guarantee a $30 million project without appropriate guarantees by the president and sole shareholder of the company that is obtaining the bonds. Thank you, Your Honor. We will reserve decision.